# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3576

_____

| | | |
|---|---|---|
| Katherine Matschiner; Kristina Matschiner, | * * * | |
| Plaintiffs - Appellees, | * * | |
| v. | * * | |
| | * | Appeal from the United States |
| Hartford Life and Accident Insurance Company, | * * | District Court for the District of Nebraska. |
| | * | |
| Defendant - Appellant. | * | |
| ------------------------------------------------ | * | |
| Hilda Solis, Secretary of Labor, | * * | |
| Amicus on Behalf of Appellant. | * | |

_____

Submitted: June 15, 2010
Filed: October 7, 2010

_____

Before LOKEN, ARNOLD, and GRUENDER, Circuit Judges.

_____

LOKEN, Circuit Judge.

In 1991, RoJane Lewis obtained life insurance under a group policy issued by Hartford Life and Accident Insurance Company to her employer, Inacom Corporation. She submitted a beneficiary designation form granting sixty percent of the death benefit to her husband, Alan Lewis, and twenty percent to each of her daughters, Katherine and Kristina Matschiner. RoJane died in April 2005. When Hartford

located the designated beneficiaries in June 2007, Katherine Matschiner advised that Kristina had a more recent beneficiary designation and that Alan Lewis intended to disclaim his share of the $122,000 death benefit. Hartford contacted Alan, who stated that he wished to collect his share of the death benefit and submitted a signed claim form. The daughters also submitted claim forms, and Kristina faxed Hartford a copy of a November 2000 divorce decree in which a Nebraska state court awarded Alan and RoJane, individually, the "cash values of any life insurance policies currently owned by him or her or the cash proceeds . . . to be received therefrom." When neither daughter submitted a more recent beneficiary designation, Hartford paid the policy benefits in accordance with the 1991 designation in its files.

The Matschiners sued Hartford and Alan Lewis in state court to recover the benefit paid to Alan. Hartford removed the action because the policy was an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq. The district court granted summary judgment to the Matschiners, concluding that Hartford abused its discretion by paying the death benefit in accordance with the 1991 designation. Hartford moved for reconsideration after the Supreme Court decided Kennedy v. Plan Administrator for DuPont Savings & Investment Plan, 129 S. Ct. 865 (2009). The district court denied the motion, distinguishing Kennedy, ordered Hartford to pay the contested benefit directly to the Matschiners, and awarded them attorneys' fees. Hartford appealed after the court directed entry of final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.[1] The Secretary of Labor, appearing as *amicus curiae*, argues that Hartford paid the death benefit in accordance with the plan

---

[1]We independently review whether the district court's Rule 54(b) determination that there was "no just reason for delay" properly conferred appellate jurisdiction under 28 U.S.C. § 1291. See Interstate Power Co. v. Kansas City Power & Light Co., 992 F.2d 804, 806-07 (8th Cir. 1993). As the district court granted relief against Hartford that, if upheld, would likely make it unnecessary to resolve the distinct claims against Alan Lewis, there was no abuse of the court's Rule 54(b) discretion.

documents and therefore complied with ERISA as construed in <u>Kennedy</u>. We agree and accordingly reverse.

## I.

When RoJane became permanently disabled in 1994, Hartford continued her group life insurance, with premiums waived, even after Inacom, the group life policyholder, went out of business some years later. Hartford learned of RoJane's death in 2005 and began an extensive search for the designated beneficiaries. When Katherine responded in June 2007 and advised that her sister had a later beneficiary designation, Hartford asked that it be submitted. Instead, Kristina faxed a copy of the divorce decree. Hartford's attempt to obtain more information from defunct Inacom went unanswered. After Alan submitted a claim for his share of the death benefit, he complained to the Nebraska Department of Insurance when Hartford did not promptly pay the claim. The Department demanded that Hartford explain the delay. Hartford then paid the death benefit in accordance with the 1991 beneficiary designation form, the only designation in its files. After these payments, the Matschiners' attorney sent Hartford a beneficiary designation signed by RoJane in December 1997 granting forty percent of the life insurance benefit to Alan and thirty percent to each daughter. This document was found in RoJane's "personal files."

In granting summary judgment to the Matschiners, the district court relied on Eighth Circuit cases applying federal common law and concluded that the divorce decree divested Alan of his beneficiary rights to the life insurance proceeds even though RoJane submitted no designated beneficiary form reflecting this change. <u>See</u> <u>Hill v. AT&T Corp.</u>, 125 F.3d 646, 648-50 (8th Cir. 1997); <u>Mohamed v. Kerr</u>. 53 F.3d 911, 914 (8th Cir. 1995). In <u>Kennedy</u>, a unanimous Supreme Court resolved a conflict in the circuits on this issue. Consistent with its prior decision in <u>Egelhoff v. Egelhoff ex rel. Breiner</u>, 532 U.S. 141, 147-48 (2001), the Court held that ERISA's statutory mandates that a plan "specify the basis on which payments are made to and from the

plan," 29 U.S.C. § 1102(a)(1), and that the plan administrator act "in accordance with the documents and instruments" of the plan, § 1104(a)(1)(D), foreclose any federal common law inquiry into whether a properly designated beneficiary's divorce decree waived his or her entitlement to plan benefits. 129 S. Ct. at 875-77. Hartford and the Secretary argue that principle is controlling here.

The savings and investment plan at issue in Kennedy was an "employee pension benefit plan" under ERISA, 129 S. Ct. at 868, whereas the group life insurance plan here at issue was a "welfare benefit plan." Although the distinction is important in other ERISA contexts, we agree with Hartford and the Secretary that the "plan documents rule" of Kennedy applies to the payment of benefits under both kinds of plans. First, the Court in Kennedy concluded that the rule is mandated by 29 U.S.C. §§ 1102(a)(1) and 1104(a)(1)(D), ERISA provisions that apply to both kinds of plans. Second, the Court's reasons for applying the plan documents rule, rather than federal common law "inquiries into nice expressions of intent," apply to the administration of both kinds of plans -- a "straightforward rule of hewing to the directives of the plan documents" has the virtues of "simple administration, avoiding double liability, and ensuring that beneficiaries get what's coming quickly, without the folderol essential under less-certain rules." 129 S. Ct. at 875-76 (quotation omitted). Finally, among the prior cases expressly overruled in Kennedy was our decision in Mohamed v. Kerr, which involved a group life insurance plan like the plan here at issue. Id. at 870 n.5.

The district court did not discuss whether Kennedy applies to welfare benefit plans generally. Rather, the court held that the holding in Kennedy was limited by footnote 13, in which the Court stated, "[w]e do not address a situation in which the plan documents provide no means for a beneficiary to renounce an interest in benefits." Id. at 877. As the plan in Kennedy included an express provision for the disclaimer of an interest in a savings and investment account, and Hartford's group policy contained no "formal procedures" for the waiver of a designated beneficiary's interest in life insurance proceeds, the district court concluded that the federal

-4-

common law of trusts as construed in <u>Mohamed</u>, rather than the plan documents rule, applies in this case. We disagree.

The Supreme Court did not explain why it added the cautionary footnote 13, but we are confident the Court did not intend to exempt from the plan documents rule all welfare benefit plans that do not contain an express waiver-of-benefits provision. As <u>Kennedy</u> explained, employee pension plans under ERISA must contain an anti-alienation provision but may permit a beneficiary to submit a disclaimer of benefits if it is "qualified" under the Tax Code. 129 S. Ct. at 868-69. Welfare benefit plans are not subject to ERISA's anti-alienation requirement and have no corresponding need to include an express waiver-of-benefits provision. Before its discussion of the plan documents rule, where footnote 13 appears, the Court noted that "[c]ommon sense and common law both say that the law certainly is not so absurd as to force a man to take an estate against his will." <u>Id.</u> at 872 (quotation omitted). We suspect that footnote 13 was simply a reminder that "common sense and common law" may apply to prevent the plan documents rule combined with ERISA's anti-alienation provision from precluding a pension benefit plan beneficiary from disclaiming an unwanted interest. Here, by contrast, the plan beneficiary, Alan Lewis, has claimed his interest in the death benefit. As in <u>Kennedy</u>, the plan documents, not the divorce decree, are controlling.

## II.

Without examining the plan documents, the district court ruled, alternatively, that Hartford abused its discretion when it paid the death benefit according to the 1991 designation, six weeks after Katherine Matschiner advised that Kristina had a later designation. Though Hartford requested the later designation, and neither daughter furnished it, the court concluded that Hartford should have warned the Matschiners that it would pay in accordance with the 1991 designation; instead, it "abruptly" paid Alan's claim in response to a Department of Insurance investigation despite being on

notice of "a legitimate dispute between the beneficiaries." On appeal, the Matschiners do not defend this alternative ruling, and Hartford argues the issue is therefore waived. We put the issue of waiver aside because we conclude that Hartford acted in accordance with the plan documents and therefore did not abuse its discretion. See King v. Hartford Life & Accident Ins. Co., 414 F.3d 994, 998-99 (8th Cir. 2005) (en banc) (standard of review).

As relevant here, Hartford's Group Insurance Policy provided:

**BENEFITS**
**Life Insurance**

**Death Benefit and to Whom Payable**

When The Hartford receives due proof of your death, the Amount of Life Insurance on your life will be paid.

Payment will be made in a lump sum to the beneficiary or beneficiaries named in writing by you, provided the names are on file with the Policyholder.

\* \* \* \* \*

Any payment made in accordance with the preceding provisions shall release The Hartford from further liability for the amount paid.

\* \* \* \* \*

**Change of Beneficiary**

You may change your beneficiary at any time by:
(1) making such change in writing on a form acceptable to The Hartford; and
(2) filing the form with the Policyholder.
After such notice is received, the change will take effect as of the date you signed it, even if you have since died. However, The Hartford will

not be liable for further payment of any amounts paid before it receives such written notice of change.

\* \* \* \* \*

## CLAIMS
### Life Insurance

If you die, your beneficiary will be furnished a claim form. . . . When the required claim papers are received and approved by The Hartford, the Amount of Life Insurance on your life will be paid.

\* \* \* \* \*

**Time Payment of Claims**
. . . . Payment for loss of life will be made:
(1) according to the beneficiary designation in effect when payment is made, or, if none is in effect;
(2) to your estate.

In applying these plan documents, the 2000 divorce decree was irrelevant because RoJane never signed and submitted a beneficiary designation form eliminating Alan as a designated beneficiary, in accordance with that decree, to the Policyholder (Inacom) or to Hartford. The record does include a 1997 designation reducing Alan's share from sixty to forty percent of the death benefit. Though in writing and apparently in proper form, there is no evidence this designation was submitted to the Policyholder, or directly to Hartford, before the death benefit was paid. When Katherine Matschiner advised Hartford of a later designation in June 2007, Hartford asked for a copy. If the Matschiners had complied before the death benefit was paid, Hartford might well have been obliged to pay in accordance with this later designation because the Policyholder was out of business and the policy otherwise terminated. But the Matschiners did not comply, and Hartford promptly paid the claims submitted by the three beneficiaries in accordance with the only designation in its files, as the policy required. The policy expressly provided that

Hartford is not liable for further payment of amounts paid under an earlier designation before it received a later designation.

In these circumstances, applying the plan documents rule, summary judgment in favor of Hartford is clearly warranted. As the Supreme Court explained, "[t]he plan provided an easy way for [the Matschiners] to change the designation, but for whatever reason [they] did not. . . . The plan administrator therefore did exactly what [29 U.S.C.] § 1104(a)(1)(D) required: the documents control . . . ." Kennedy, 129 S. Ct. at 877 (quotation omitted).

The judgment of the district court dated October 5, 2009, is reversed, including the award of attorneys' fees, and the case is remanded with instructions to enter judgment dismissing the claims against Hartford with prejudice. That will leave the Matschiners' separate claims against Alan Lewis, which may or may not have an independent basis of federal jurisdiction. If not, the district court will need to decide whether to exercise its supplemental jurisdiction or to dismiss these state law claims without prejudice. See 28 U.S.C. § 1367(c); cf. Hall v. Hall, 2009 WL 2837720 (E.D. Pa. Sept. 3, 2009).

_____